\O 241
(Rev. 12/04)

Page 2

**PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY**   0 8 ¯ -- 1 6 8

| United States District Court | District: | of Delaware | |
|---|---|---|---|
| Name (under which you were convicted): <br><br> MELVIN L. WILLIAMS | | | Docket or Case No.: |
| Place of Confinement : <br> DELAWARE CORRECTIONAL CENTER | | Prisoner No.: <br> SBI# 282948 | |
| Petitioner (include the name under which you were convicted) <br><br> MELVIN L. WILLIAMS | Respondent (authorized person having custody of petitioner) <br><br> v.    STATE OF DELAWARE | | |
| The Attorney General of the State of    DELAWARE | | | |

## PETITION

1.  (a) Name and location of court that entered the judgment of conviction you are challenging:

    SUPERIOR COURT OF THE STATE OF DELAWARE IN AND FOR NEW CASTLE COUNTY

    (b) Criminal docket or case number (if you know): NO. 04-06-1021/2629-2630

2.  (a) Date of the judgment of conviction (if you know):    JULY 14, 2006

    (b) Date of sentencing:    SEPTEMBER 15, 2006

3.  Length of sentence:    LIFE IMPRISONMENT

4.  In this case, were you convicted on more than one count or of more than one crime?    ☒ Yes    ☐ No

5.  Identify all crimes of which you were convicted and sentenced in this case:

    FIRST DEGREE INTENTIONAL MURDER; POSSESSION OF A FIREARM DURING COMMISSION

    OF A FELONY; POSSESSION OF A DEADLY WEAPON

6.  (a) What was your plea? (Check one)

    ☒ (1)    Not guilty    ☐ (3)    Nolo contendere (no contest)

    ☐ (2)    Guilty    ☐ (4)    Insanity plea

    (b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did
    you plead guilty to and what did you plead not guilty to?    N/A

7.  Did you testify at a pretrial hearing, trial, or post-trial hearing?    Yes ☐        No ☒xx

8.  Did you appeal from the judgment of conviction?    Yes ☒x        No ☐

9.  If you did appeal, answer the following:

(a) Name of court: _____ Delaware Supreme Court _____

(b) Docket or case number (if you know): Supreme Court No. 543, 2006

(c) Result: conviction and sentence affirmed _____

(d) Date of result (if you know): __ March 28, 2007 _____

(e) Citation to the case (if you know): _____

(f) Grounds raised: _____ The evidence at trial was insufficient ___
    __ to support the guilty verdict. _____

    _____

    _____

    _____

    _____

(g) Did you file a petition for certiorari in the United States Supreme Court?    Yes ☐        No ☒

    If "Yes," answer the following:

    (1) Docket or case number (if you know): _____

    (2) Result: _____

    _____

    (3) Date of result (if you know): _____

    (4) Citation to the case (if you know): _____

    (5) Grounds raised: _____

    _____

    _____

    _____

    _____

    _____

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or appl
    concerning this judgment of conviction in any court?
    Yes ☒xx    No ☐

11. If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court: Superior Court of State of Delaware

    (2) Docket or case number (if you know): _____

    (3) Date of filing (if you know): __ March 25 , 2008 _____

(4) Nature of the proceeding: ___Motion for post-conviction relief___

(5) Grounds raised: __I. Trial counsel rendered ineffective assistance by fail-__
ing to move for a judgment of acquittal in the Superior Court, thus waiving
Williams' Meritorious claim that the evidence was insufficient to support
either the convictions or sentences; II Trial counsel rendered ineffective
assistance by promoting the jury's inference that Melvin Williams had ad-
mitted to murdering somebody and appellate counsel was ineffective for not
raising this issue on direct appeal; III.Trial counsel rendered ineffective
assistance by not offering evidence that Melvin Williams fled police because
of an outstanding arrest warrant, thus allowing the jury to infer that he fled
police because he was guilty of murder, and appellate counsel rendered inef-
fective assistance by not raising this issue on direct appeal; (See # IV on
separate sheet behind page 4)

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?

      Yes ☐     No ☒

(7) Result: _____Post Conviction Relief Motion pending_____

(8) Date of result (if you know): __None to date__

(b) If you filed any second motion, petition, or application, give the same information:

(1) Name of court: _____N/A_____

(2) Docket of case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised: _____

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?

      Yes ☐     No ☐

(7) Result: _____

(8) Date of result (if you know): _____

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petiti
or application?

(1) First petition:    Yes ☐     No ☒

(2) Second petition:    Yes ☐     No ☒

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did

_____Matter pending and no jurisdiction_____

Continuation of (5) on page 4

POINT IV.    Trial counsel rendered ineffective assistance by not introducing critical evidence linking another suspect to the murder, and appellate counsel was also ineffective for not raising this issue on direct appeal.

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

**GROUND ONE:** _____ The evidence at trial was insufficient _____
_____ as a matter of law to support guilty verdicts _____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_____ Please see Statement of Facts attached hereto _____

(b) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☒x    No ☐

(2) If you did not raise this issue in your direct appeal, explain why: _____

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☒x    No ☐

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____ Petition for Post-Conviction relief _____

Name and location of the court where the motion or petition was filed:
Superior Court for State Delaware - New Castle County

Docket or case number (if you know): _____ 04-06-1021-2629-2630 _____

Date of the court's decision: _____ still pending _____

Result (attach a copy of the court's opinion or order, if available): _____
_____ not available _____

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐    No ☒x

Page 5, Ground One: (a)

## STATEMENT OF FACTS

In May 2003, Latoya Green and her 5 year old son moved into a small row house at 520 N. Monroe Street in the City of Wilmington. (Tr. 7/10, pp. 86-87) (A-). Sometime during January or February 2004, the defendant, Melvin Williams ("Williams"), who was Latoya Green's cousin, moved into the residence. Williams lived at the residence, off and on, through the end of April 2004. At that time, the electricity to the residence was shut off and the residence was vacated. During this time, Williams had a key to the residence. (Tr. 7/10, pp. 92-95) (A-). From time to time, many other people, who were friends or relatives of Latoya Green, also stayed at 520 N. Monroe Street from time to time. In particular, James Green and his girlfriend Jennifer Thomas stayed at 520 N. Monroe from time to time. (Tr. 7/10, pp. 103-106) (A-).[3] Many of these people, in addition to the defendant, had keys to the house. (Tr. 7/10, pp. 104-106) (A-).

On April 26, 2004, electric service to the house was cut off and Latoya Green and her son moved out of 520 N. Monroe and went to live with her mother. After she moved out, once or twice a week, Latoya would return to 520 Monroe to check on her mail and phone messages. During this time, she was aware that other people, including the defendant, James Green and Jennifer Thomas were still staying at the house off and on. (Tr. 7/10, pp. 107-108) (A-).

On June 2, 2004, Jennifer Thomas and James Green went to 520 N. Monroe. When they went inside, they noticed a "foul odor" coming from the basement. They called the police. After waiting about 20 minutes for the police to arrive, they left the residence. They returned to the

---

[3] James Green and Melvin Williams were cousins. (Tr. 7/10, p. 171) (A-).

-3-

residence the next day. When they returned, they noticed that the odor was stronger and they saw flies near one of the basement windows. They opened the basement door and saw something near the bottom of the basement steps. At some point while they were at the residence, they contacted the defendant, Melvin Williams, who came over to the residence a short time after Thomas and Green arrived there.[4] After Williams arrived, they told Williams about the foul smell. They all went back inside and Williams and Green went down the basement steps and saw what appeared to be a body. (Tr. 7/10, pp. 128-133) (A-). According to Jennifer Thomas, after the body was discovered, the defendant suggested that they should help him move the body out of the house. Jennifer told the defendant that they would not do that and they were going to call the police. The defendant did not want them to call the police and he left the residence before the police arrived. Thomas then called the police and she and Green waited at the residence until the police arrived. (Tr. 7/10, pp. 133-136) (A-).

At the trial, Dr. Adrienne Perlman of the Medical Examiner's Office testified that she went to 520 N. Monroe Street on June 3rd in response to a call from the police. When she went into the basement, she saw a body lying on the basement floor. The body was partially decomposed and appeared to be wrapped in some sheets. There was a strong odor in the basement that was consistent with a decomposing body. She also observed decomposition fluids and possible blood around the body. In her opinion, the body had been there more than 24 hours, but she was unable to fix a more precise time of death. (Tr. 7/11, pp. 10-16) (A-). After the body was removed from the residence, an autopsy was conducted to determine the

---

[4] James Green also called Latoya Green on June 3rd and told her about the foul smell coming from the basement. (Tr. 7/10, pp. 99) (A-).

cause of death.  The autopsy examination showed that the victim had four
gunshot wounds to the head.  Other than the gunshot wounds, there was no
evidence of trauma except for a small cut on the victim's left thumb.  In
Dr. Perlman's opinion, the gunshots appeared to have been fired from
close range.  Dr. Perlman also testified that it was highly unlikely that
the gunshot wounds were self-inflicted.  (Tr. 7/11, pp. 27-32) (A-).[5]

During the police investigation of the homicide, it was learned that
the name of the victim was Keith Quailes.  When the police contacted
Quailes father, they learned that the last time he and his wife had seen
Keith Quailes was on May 26, 2004, when Keith had borrowed his mother's
car.  At the trial, Larry Quailes, who was Keith Quailes' father,
testified that Keith was addicted to cocaine.  Larry Quailes testified
that on May 26, 2004, Keith had borrowed his mother's car, a 1989
Chrysler LeBaron and told his mother that he needed the car to check up
on some job prospects.  By the next day, when Keith had not returned
home, his mother contacted the police and filed a report of an
unauthorized use of a vehicle.  (Tr. 7/10, pp. 33-36) (A-).

During the investigation, the police also learned that Melvin
Williams had been seen driving a 1989 LeBaron.  At the trial, Mychal
Williams, who is defendant Melvin Williams' brother, testified that on
May 26th, he was walking with the defendant in the Riverside area of north
Wilmington, when someone drove up to them and started a conversation with
the defendant.  The defendant then called Mychal over to the car and they
both got inside the car.  He did not know the driver of the car, but his

---

[5] During the autopsy examination, a "crack pipe" and a piece of
paper were found in the waistband of the victim's pants.  (Tr. 7/11, p.
25) (A-).

brother may have known him.[6]   Mychal did not hear the details of the conversation between the defendant and the driver, but he found out that Melvin had made a deal with the driver to give the driver some cocaine in exchange for permission to use the car for a period of time.   In street jargon, such a transaction is known as a "bloop ride." After the "bloop ride" transaction was concluded, Quailes drove the car crosstown to the area of 6th and Monroe.  Quailes then got out of the car and Mychal and the defendant drove off in Quailes' car. (Tr. 7/10, pp. 53-60) (A-).

After the police learned that Melvin Williams might be in possession of the 1989 LeBaron, a surveillance was set up at the residence where Melvin Williams was then living. On June 4, 2004, Det. Gary Tabor of the Wilmington Police observed a maroon Chrysler Le Baron near 22nd and Lamotte Street that was being driven by a black male. They were able to confirm that the tag number of that vehicle matched the vehicle that the victim, Keith Quailes had been driving.  By the time they had confirmed the identity of the vehicle, the vehicle was parked near 23rd and Lamotte and was unoccupied. A short time later, they saw the defendant get into the vehicle and drive off. When they attempted to stop the vehicle, they observed the defendant get out of the vehicle and run off. After a short foot chase, the defendant was apprehended. (Tr. 7/11, pp. 198-203) (A-).

At trial, one of the State's witnesses was Daimere Fields ("Fields").  Fields was 15 years old and knew the defendant through the defendant's younger brother, Brian Williams. (Tr. 7/11, p. 178) (A-). Fields testified that he told Detective Matt Hall that he overheard the defendant tell Markis Williams (a cousin of the defendant) that he had "banked someone." (Tr. 7/11, pp. 182-186) (A-).   Fields then claimed that

---

[6] At trial, Mychal Williams identified Keith Quailes as the driver of the car. (Tr. 7/10, p. 57) (A-).

-6-

he did not remember what he told Det. Hall and that Hall had pressured him to give a statement. Fields was then shown his testimony from the defendant's first trial[7] and acknowledged that he had stated that the defendant said that the "banking" had occurred in his cousin's basement and that these statements had been made by the defendant before the victim's body had been found. (Tr. 7/11, pp. 185-188) (A-). On cross-examination, Fields denied that the defendant had ever made those statements and that he was only telling Det. Hall what Hall had told him about the case. (Tr. 7/11, pp. 191-192) (A-).

During the police investigation of the homicide, physical evidence was presented at trial that had been collected from 520 N. Monroe Street. The following items were collected from the basement:

• a yellow latex glove was found at the bottom of the basement stairs

• a blue bathrobe was found near the body

• on the basement floor, there were bloodstains that appeared to have been wiped from the floor, together with a paper towel

• a sheet with blood on it was found near the victim's feet[8]

• a bucket containing a soapy liquid was found near the bathrobe and paper towel

• a second latex glove was found hear the heater in the basement

• a bottle of Tilex cleaning liquid was found on a washing machine in the basement

• possible spots of blood were found on the washing machine

---

[7] The jury was not told that the statements were made in the defendant's first trial.

[8] At trial, Latoya Green testified that after the body was found, she noticed that sheets and a blanket were missing from her bedroom. (Tr. 7/10, p. 98) (A-).

-7-

• possible spots of blood were found on wooden posts that supported the basement

• what appeared to be a bullet fragment was found in the east side of the basement

• a partially filled bottle of PineSol cleaner was found in the kitchen

• latent prints were lifted from a cordless V-Tech phone box

• what appeared to be blood splatters were found in a second floor bedroom.

(Tr. 7/11, pp. 68-91) (A-); (Tr. 7/11, pp. 150-160) (A-).

At trial, Cpl. Alfred Fillipone ("Fillipone"), a fingerprint examiner employed by the Wilmington Police Department, testified that he compared the latent fingerprints taken from the crime scene to certain "known" fingerprints, including the defendant's known fingerprints. According to Fillipone, the latent print taken from the Pine-Sol bottle was a match to the defendant's right index finger. Also, one of the latent prints taken from the Tilex bottle[9] was a match to the defendant's right ring finger. (Tr. 7/12, pp. 68-74) (A-).

At the trial, Teri Zerbe ("Zerbe"), who is employed by the Medical Examiner's Office as a forensic DNA analyst, testified that DNA was extracted from several of the items recovered from the crime scene and was compared to the known DNA profile of the victim and of the defendant. (Tr. 7/12, pp. 25-28) (A-).[10] Zerbe testified that blood found on the sheet, the washing machine and on a wooden post were consistent with the victim's DNA profile. The blood from the stained areas on the basement

---

[9] A total of seven latent prints were lifted from the Tilex bottle. (Tr. 7/12, p. 73-74) (A-).

[10] The police had obtained a DNA sample from the defendant. (Tr. 7/12, p. 32) (A-).

-8-

floor came from an unknown male.  There was DNA from at least two unknown donors on the paper towel.  There was also DNA on the robe that came from multiple unknown donors.  (Tr. 7/12, pp. 26-39) (A-).  DNA samples taken from the latex gloves were inconclusive or id not produce any result.  (Tr. 7/12, pp. 40-43) (A-).

When the police searched the residence where the defendant was living after he moved out of 520 N. Monroe Street, they found latex gloves that were similar to the latex gloves found at the crime scene.  (Tr. 7/11, pp. 139-141) (A-).

-9-

AO 243 (Rev. 12/04 Delaware                                                                    Page

(4)  Did you appeal from the denial of your motion, petition, or application?

 Yes ☐          No ☐xx

(5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

 Yes ☐          No ☐

(6)  If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7)  If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise

 issue:        No decision has been rendered to date

**GROUND TWO:**           Trial counsel rendered ineffective assistance by failing to
move for a judgment of acquittal in the Superior Court, thus waiv-
ing Williams' meritorious claim that the evidence was insufficient to support
either the convictions or sentences.

(a)  Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

         At trial, trial counsel did not raise the issue of insufficient
evidence before the Superior Court.  No Motion for Judgment of Acquittal
or Post-verdict Motions were submitted.

(b)  **Direct Appeal of Ground Two:**

(1)  If you appealed from the judgment of conviction, did you raise this issue?

 Yes ☐          No ☒x

(2) If you did not raise this issue in your direct appeal, explain why:

Appellate counsel failed to raise the issue of trial counsel's

ineffectiveness

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☒xx    No ☐

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: Motion for post-conviction relief

Name and location of the court where the motion or petition was filed:

Superior Court, State of Delaware, New Castle County

Docket or case number (if you know): 04-06-1021-2629-2630

Date of the court's decision: ~~still pending~~

Result (attach a copy of the court's opinion or order, if available):

Not available at this time

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐    No ☐xx

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐    No ☐xx

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐    No ☐

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise

issue: No decision rendered from Superior Court on

Petition for post conviction relief.

AO 243 (Rev. 12/04 Delaware                                                                    Pag

**GROUND THREE:** Trial counsel rendered ineffective assistance by promoting the jury's inference that Melvin Williams had admitted to murdering somebody and appellate counsel was ineffective for not raising this issue on direct appeal.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Trial counsel improperly permitted the jury to infer that defendant had admitted to killing the decedent when he allegedly told Demetrius Fields that he had "banked somebody". In the first trial, trial counsel took great pains to elicit on cross examination that the term "banked somebody" is a colloquialism for "beating" someone up, not killing them as the State intimated. However, at Mr. Williams' second trial, trial counsel did not seek any definition whatsoever and, thereby, allowed the jury to incorrectly infer that Mr. Williams alleged statement to be an admission of murder. Obviously, this severly prejudiced Mr. Williams and deprived him of a fair trial.

(b) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐   No ☒

(2) If you did not raise this issue in your direct appeal, explain why:

Appellate counsel failed to raise the issue of trial counsel's ineffectiveness.

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☒   No ☐

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: Petition for Post-Conviction relief

Name and location of the court where the motion or petition was filed:

Superior Court for State of Delaware – New Castle County

Docket or case number (if you know): 04-06-1021-2629-2630

Date of the court's decision: still pending

Result (attach a copy of the court's opinion or order, if available):

not available

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐   No ☒

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐   No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐   No ☐

AO 243 (Rev. 12/04 Delaware                                                                                    Page

(6)  If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7)  If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise

issue:        No decision had been rendered to date.

**GROUND FOUR:**  Trial counsel rendered ineffective assistance by not offering evidence that Melvin Williams fled police because of an outstanding arrest warrant thus allowing the jury to infer that he fled police because he was guilty of murder, and appellate counsel rendered ineffective assistance by not

(a)  Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

raising this issue on direct appeal

Trial counsel again luxy fertile ground for Mr. Williams' conviction by not challenging the State's insinuation that Mr. Williams fled police because he committed the murder. Trial counsel did nothing to challenge this perception, despite having evidence establishing that Mr. Williams had a relatively innocuous motive for attempting to avoid apprehension; an open arrest warrant for failing to appear in court. Although somewhat prejudicial, this evidence was far less damaging than allowing the jury to presume that Mr. Williams fled because he was guilty of murder. (See attach-ment).

(b)  **Direct Appeal of Ground Four:**

(1)  If you appealed from the judgment of conviction, did you raise this issue?

Yes ☒        No ☐

(2)  If you did not raise this issue in your direct appeal, explain why:

(c)  **Post-Conviction Proceedings:**

(1)  Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐        No ☐

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: ~~Petition for Post-Conviction Relief~~

Name and location of the court where the motion or petition was filed:

Superior Court for State of Delaware - New Castle County

Docket or case number (if you know): 04-06-1021-2629-2630

Date of the court's decision: still pending

Result (attach a copy of the court's opinion or order, if available):

 not available

(3) Did you receive a hearing on your motion, petition, or application?

 Yes □    No ☒

(4) Did you appeal from the denial of your motion, petition, or application?

 Yes □    No □

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

 Yes □    No □

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise

issue: Appellate counsel failed to raise the issue
 of trial counsel's ineffectiveness.

13. Is there any ground in this motion that you have not previously presented in some federal court? If so, which
    ground or grounds have not been presented, and state your reasons for not presenting them:

 Not applicable

Page 9, Ground Four - continued

Trial Counsel again lay fertile ground for Mr. Williams conviction by not challenging the State's insinuation that Mr. Williams fled police because he committed the murder. Trial counsel did nothing to challenge this perception, despite having evidence establishing that Mr. Williams had a relatively innocuous motive for attempting to avoid apprehension; an open arrest warrant for failing to appear in court. Although somewhat prejudicial, this evidence was far less damaging than allowing the jury to presume that Mr. Williams fled because he was guilty of murder

In the instant case, Melvin Williams left 520 North Monroe Street after a corpse was discovered and the police were contacted. He again fled from police on July 4, 2004, when police attempted to arrest him. In the first trial, Jennifer Thomas testified that she knew that Melvin Williams knew he was wanted by the authorities and had a warrant out for arrest. (N.T. 6/1/05, p. 169, ln. 5-12). She also indicated that this was the reason that he was not going to "stay around" while police were imminently arriving on the scene. Id.

At the second trial, counsel did not introduce any evidence of Mr. William's open arrest warrant. Indeed, the record reflects that trial counsel inexplicably abandoned a line of questioning designed to elicit this information during his cross examination of Detective Gary Tabor. Specifically, trial counsel asked Detective Tabor whether he knew if there was an outstanding arrest warrant for "any matter whatsoever" at the time of Mr. William's arrest. When Detective Tabor responded that he did not know, trial counsel did not seek to elicit this information from any other witness. (N.T. 7/11/05, p. 203, ln. 16-22). He failed to do so, despite knowing that Jennifer Thomas, who testified to that effect at the first trial, had knowledge of the open arrest warrant and could have testified to its existence.

For the above reasons, trial counsel could have had no rationale basis for failing to pursue a line of inquiry, which would have offered the jury a viable alternative explanation for why Mr. Williams fled police. Trial counsel's failure to pursue this line of inquiry, which he effectively executed at the first trial, allowed the jury to assume that Mr. Williams fled police because he murdered the decedent. This presumption severely prejudiced Mr. Williams and resulted in his conviction. For the same reasons that rendered trial counsel ineffective, Appellate counsel was equally ineffective for failing to raise this claim on direct appeal.

**GROUND FIVE:** Trial counsel rendered ineffective assistance by not introducing critical evidence linking another suspect to the murder, and the appellate counsel was also ineffective for not raising the issue on direct appeal.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim):

Trial Counsel possessed evidence linking another suspect to the murder, but failed to introduce any evidence to that affect. As a result, the jury was permitted to believe there were no other viable suspects in the decedent's murder. Specifically, Brian Williams and his mother, Frakeisha Johnson, could have provided credible testimony that Mr. Williams cousin, Markis Williams, had motive and opportunity to commit the murder, peculiar knowledge of the murder, and had contaminated the investigation in order to cast suspicion on Mr. Williams. Trial Counsel's inexplicable failure to introduce this vital evidence deprived Mr. Williams of his constitutional right to a fair trial.

In the instant case, Brian Williams stated to police that his stepfather, Markis Williams, told him to tell the police that the victim in the basement of Latoya Green's house was shot in the head five times (Interview of Frakeisha Johnson, dated May 24, 2005; statements by Det. Hall regarding comments made by Brian Williams to him on May 23, 2005). Furthermore, Brian Williams told police that Markis Williams had instructed him to say that the reason Brian knew about the murder was because Melvin Williams told him directly while they were on the street. Trial counsel's failure to present this testimony caused Melvin Williams severe prejudice by depriving him of meaningful opportunity to present a full defense and allowing the jury to infer that no other plausible suspect existed.

These statements indicate Markis Williams intent, plan, motive and design to misdirect the police investigation and implicate Melvin Williams in the crime to conceal his own apparent involvement.

Similarly, Frakeisha Johnson possessed information suggesting Markis Williams' guilt in the murder of Keith Quailes. On May 24, 2005, Frakeisha Johnson spoke with the police. She told police that on Memorial Day weekend, 2004, she was forced to move under short notice. Accordingly, she needed to store her belongings at that time. She stated that on either Sunday, May 30, 2004 or Monday, May 31, 2004, she had asked Markis Williams whether she could store some of these belongings in the basement of 520 North Monroe Street. She told police that Markis had told her that she could not go to the basement because "there was something down there." (Interview of Frakeisha Johnson, dated May 24, 2005). While a transcript of the police interview revealed this statement, the record is notably void of this information.

Frakeisha Johnson would have been permitted to testify to Markis Williams' statement "there is something down there" at the time of trial. This statement was not a hearsay declaration. Delaware Rules of Evidence 801(c) sets forth that hearsay is "a statement, other than one made by the declarant while testifying at trial...offered in evidence to prove the truth of the matter asserted." Del. R. Evid. 801(c). This statement would not have been offered to prove that there was, in fact, "something down there", but instead that Markis Williams possessed certain knowledge prior to June 3, 2004.

Markis Williams' statement to Frakeisha Johnson that "there is something down there" suggests that he had knowledge of the body before its discovery on June 3, 2004. This tends to

prove that the third person, Markis Williams, was guilty of the crime with which Melvin Williams was charged. Therefore, testimony as to these facts was both admissible and logically relevant at the time of trial.

Trial counsel could have had no rational basis for failing to bring this critical evidence before the jury. But for counsel's unprofessional errors, the jury would have been permitted to consider Markis

All other answers for Ground Five are the same as Ground Four.

14. Do you have any motion, petition, or appeal now pending (filed and not decided yet) in any court for the you are challenging?        Yes ☒        No ☐

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.    Identical to those issues raied here

_____

_____

_____

_____

15. Give the name and address, if known, of each attorney who represented you in the following stages of the you are challenging:

(a) At the preliminary hearing:    Nicole M. Walker

(b) At the arraignment and plea:        See "C"

(c) At the trial:  First trial – Eugene Maurer

Second trial – Christopher D. Tease

(d) At sentencing:

Christopher D. Tease

(e) On appeal:        Joseph Burnstein

(f) In any post-conviction proceeding:        Undersigned counsel

(g) On appeal from any ruling against you in a post-conviction proceeding:    N/A

16. Were you sentenced on more than one court of an indictment, or on more than one indictment, in the same co and at the same time?        Yes ☒        No ☐

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?        Yes ☐        No ☒

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

_____

(b) Give the date the other sentence was imposed:

(c) Give the length of the other sentence:

(d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment o sentence to be served in the future?        Yes ☐        No ☐

18.  TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

Not applicable

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of –

(1)  the date on which the judgment of conviction became final;

(2)  the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

(3)  the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4)  the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Therefore, movant asks that the Court grant the following relief: _____

~~Vacate judgments of conviction and sentence and/or grant new trial on~~
all counts.
_____

or any other relief to which movant may be entitled.

Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion
under 28 U.S.C. § 2255 was placed in the prison mailing system on _____.

(month, date, year)

Executed (signed) on _____ (date

_____

Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion.

_____

_____

IN FORMA PAUPERIS DECLARATION

[Insert appropriate court]

* * * * *

# *MANDATE*

THE SUPREME COURT OF THE STATE OF DELAWARE

TO:   Superior Court of the State of Delaware in and for New
      Castle County:

*GREETINGS:*

   **WHEREAS**, in the case of:

### *State of Delaware v. Melvin L. Williams*

Cr. ID No. 0406005054

a certain judgment or order was entered on the 15th day of

September 2006, to which reference is hereby made; and

**WHEREAS**, by appropriate proceedings the judgment or order was

duly appealed to this Court, and after consideration has been

finally determined, as appears from the Order dated March 28,

2007, a certified copy of which is attached hereto;

   **ON CONSIDERATION WHEREOF IT IS ORDERED AND ADJUDGED** that

the order or judgment be and is hereby affirmed.

Audrey F. Bacino
Assistant Clerk of the Supreme Court

Issued:   April 13, 2007

Supreme Court No. 543, 2006